**STATE of Missouri, Respondent,**

v.

**Courtney L. LAWHORN, Appellant.**

No. 70549.

Supreme Court of Missouri,
En Banc.

Dec. 13, 1988.

Melinda K. Pendergraph, Columbia, for appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERTSON, Judge.

A jury convicted Courtney L. Lawhorn, appellant, of first-degree burglary. He was sentenced as a prior offender to a term of seven years. The Court of Appeals, Western District, affirmed. We granted transfer to consider two issues of general importance: First, whether a jury may consider the testimomy of an expert witness on the subject of the reliability of eye witness identification, and second, whether Section 558.019, RSMo 1986, as applied in this case, violates the prohibition against *ex post facto* laws found in Mo.Const. art. I, § 13. We have jurisdiction. Mo.Const. art. V, § 10. Conviction affirmed. Remanded for sentencing.

## I.

On November 28, 1986, Eric Jensen was the only occupant of a fraternity house at the University of Missouri–Columbia, all other members of the fraternity having left for the Thanksgiving vacation. Jensen was asleep in his room on the second floor of the fraternity house. Prior to retiring, Jensen had propped a metal chair against his door. At approximately 12:00 noon, the sound of the chair scraping across the hardwood floor awakened Jensen. Jensen saw a black man poke his head and shoulders into the room and inquired as to the man's purpose in the fraternity house. The man backed quickly out of the room; Jensen followed him into a well-lighted hallway and again asked why he was there. The visitor said that he had come to pick up the cook. Jensen informed him that the fraternity house was closed and that the cook was not there.

The conversation and Jensen's opportunity to observe the intruder lasted between two and one-half and five minutes. As the two talked, Jensen noticed some stereo components missing from the room next to his and told the man, later identified by Jensen as appellant, to stay there while he notified the authorities about the missing items. At that point, appellant ran out of the front door of the fraternity house. Jensen climbed out on the roof of the fraternity house and watched appellant get into a maroon Honda automobile. Jensen noted the license plate number and immediately called the police giving a description of the intruder and the car and providing the license number.

An officer of the Columbia Police Department heard the police broadcast regarding the burglary and soon located the described vehicle. In the officer's presence, appellant came out of the house with several other individuals. When asked about the car, appellant indicated that it belonged to his father and had not been moved from that spot all day. The police officer felt the car's hood; it was warm. Appellant started to walk away. The officer informed appellant that he matched the description of a suspect in a burglary. Appellant immediately donned glasses and placed a hood over his head.

Meanwhile, another police officer had picked Jensen up. The two drove by the area in which the car had been found. While there Jensen had an opportunity to observe appellant. Jensen tentatively identified appellant as the burglar but indicated he could not be sure because of the glasses and the hood.

The officers arrested appellant and took him to the police station; he was photographed without the hood and glasses. Jensen was shown a photographic array which included appellant's photograph. Jensen positively identified appellant as the fraternity home intruder.

## II.

In the argument upon which appellant places his greatest emphasis, appellant

urges that the trial court erred in refusing to admit testimony by defense witness, Alvin G. Goldstein, a proffered expert on the subject of the reliability of eyewitness identification. Appellant contends that he was entitled to have the jury consider the opinions of Goldstein which, according to the offer of proof made at trial, were to the effect that there is inherent difficulty in cross-racial eyewitness identification, that post-confrontation events affect the witness' perception of what has occurred and that no correlation exists between a witness' confidence in his identification and the correctness of the identification.

Two reported cases in Missouri have previously considered the admissibility of expert testimony on the reliability of eyewitness identification. Neither case ruled the question authoritatively and unequivocally. In *State v. Bullington*, 680 S.W.2d 238 (Mo.App.1984), the Court of Appeals, Western District, indicated in dicta that expert evidence as to the reliability of eyewitness identification is generally inadmissible because it invades the function of the jury in assessing the credibility of the witnesses. *Bullington* turned, however, on failure of the defense to make a sufficient offer of proof.

In *State v. Cooper*, 708 S.W.2d 299 (Mo. App.1986), the Court of Appeals, Eastern District, identified the emergence of a "modern trend" favoring the admissibility of such expert testimony, but did not reach the issue of admissibility directly. The court found that evidence other than the eyewitness identifications was sufficient in that case to affirm the conviction.

This case squarely presents the issue whether the defendant in a criminal case is entitled to present expert opinion testimony on the reliability of eyewitness identification. The State's case and appellant's guilt or innocence depend upon the identification of appellant by Jensen. Further, appellant's counsel made a full offer of proof on the record regarding the expert's proposed testimony. This is an issue of first impression for this Court.

In his argument, appellant urges that the "modern trend" favors admission of expert testimony to aid the jury in evaluating eyewitness identification evidence. That "trend" limits the admissibility of such evidence only by the condition that the expert not particularize his opinion in terms of any actual witness at the trial. The leading cases are *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208 (banc 1983), and *People v. McDonald*, 37 Cal.3d 351, 690 P.2d 709, 208 Cal.Rptr. 236 (banc 1984). *Chapple* holds that under the particular facts of that case, eyewitness identification evidence was sufficiently suspect so as to warrant admission of the expert's testimony to aid the jury. 660 P.2d at 1223–24. *McDonald* cites *Chapple* and concludes that the decision to admit or exclude expert testimony remains primarily a matter within the trial court's discretion. However, where (1) identification is a key element of the prosecution's evidence, (2) the guilt of the accused is not substantially corroborated by other evidence, and (3) the evidence by a qualified expert would supply information not likely to be known to the jury, *McDonald* holds it is an abuse of discretion to refuse to admit such evidence. 690 P.2d at 727.

Neither *McDonald* nor *Chapple* have been widely followed. In *State v. Poland*, 144 Ariz. 388, 698 P.2d 183, 193–4 (1985), the Arizona Supreme Court limited *Chapple* to its facts, stating, "The peculiar facts of Chapple were not present in the instant case." 698 P.2d at 194.

 Generally, expert testimony is admissible if it is clear that the subject of such testimony is one upon which the jurors, for want of experience or knowledge, would otherwise be incapable of drawing a proper conclusion from the facts in evidence. *State v. Taylor*, 663 S.W.2d 235, 239 (Mo. banc 1984). "The theory upon which expert testimony is excepted from the opinion evidence rule is that such testimony serves to inform the court [and jury] about affairs not within the full understanding of the average man." *Farris v. Interstate Circuit*, 116 F.2d 409, 412 (5th Cir.1941). Therefore, proffered expert testimony should be excluded if it does not assist the jury, or if it unnecessarily diverts

the jury's attention from the relevant issues. *Taylor*, 663 S.W.2d at 239. Expert testimony is also inadmissible if it relates to the credibility of witnesses, for this constitutes an invasion of the province of the jury. *Id.*

Almost uniformly, state and federal courts have upheld the trial court's exercise of discretion to exclude expert testimony on eyewitness identification, primarily on the ground that jurors may rely on their own experience to reach a judgment on what weight to give eyewitness evidence. *People v. Beaver*, 725 P.2d 96 (Colo.App. 1986); *State v. Kemp*, 199 Conn. 473, 507 A.2d 1387 (1986); *Taylor v. United States*, 451 A.2d 859 (D.C.1982), *cert. denied*, 461 U.S. 936, 103 S.Ct. 2105, 77 L.Ed.2d 311 (1983); *Johnson v. State*, 438 So.2d 774 (Fla.1983), *cert. denied*, 465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984); *State v. Hoisington*, 104 Idaho 153, 657 P.2d 17 (1983); *People v. Johnson*, 97 Ill.App.3d 1055, 53 Ill.Dec. 402, 423 N.E.2d 1206 (1981); *State v. Wheaton*, 240 Kan. 345, 729 P.2d 1183 (1986).

Appellant argues, however, that he should have been permitted to explain that research indicates the existence of "the other race effect," which causes persons to have difficulty identifying individuals of a different race, and that the effects of the passage of time, stress at the time of the crime, and the retrieval level in facial recognition memory of the human brain, all combine to diminish a witness' ability to make an accurate identification. We believe, however, that such matters are within the general realm of common experience of members of a jury and can be evaluated without an expert's assistance. *State v. Kemp*, 199 Conn. 473, 507 A.2d 1387, 1389 (1986). The Supreme Judicial Court of Massachusetts recently stated:

> [O]ne may fairly contend that the jury would be aided by expert testimony. But [expert testimony on eyewitness identification], ... deals with general principles, such as the fact that memories fade over time, that people under severe stress do not acquire information as well as alert persons not under stress, and that people tend unconsciously to

resolve apparent inconsistencies between their memories and after acquired facts. Obviously, there are aspects of these general principles on which experts might make some contribution in particular cases. However, juries are not without a general understanding of these principles and, ... they see the possible application of these principles in concrete circumstances. The jury [must] have the opportunity to assess the witnesses' credibility on the basis of what is presented at trial and not solely on general principles.

*Commonwealth v. Francis*, 390 Mass. 89, 453 N.E.2d 1204, 1210 (1983).

The fact that in many instances identifications may be unreliable and that the state's case and the subsequent determination of guilt or innocence may depend on the credibility of eyewitness identifications, does not leave a criminal defendant without protection if the trial court, in its discretion, denies the admissibility of expert testimony in this regard.

> Due process requires that such identifications be used only if they are reliable, and are not the product of unnecessarily suggestive police procedures.... The weaknesses of identifications can be explored on cross-examination and during counsel's final arguments to the jury.... If the reliability of the identifications can be adequately questioned by such means and the jury is capable of understanding the reasons why they may be unreliable, the introduction of expert testimony would be "a superfluous attempt to put the gloss of expertise, like a bit of frosting, upon inferences which lay persons were equally capable of drawing from the evidence." *State v. George*, 194 Conn. 361, 481 A.2d 1068, 1075 (1984).

*Kemp*, 507 A.2d at 1390.

In this case appellant had a full opportunity to cross-examine the eyewitness and to challenge his reliability in closing argument. The trial court did not abuse its discretion in refusing to permit Dr. Goldstein's testimony. The point is denied.

## III.

Appellant next argues that Section 558.019, RSMo 1986, as applied to him in this case is an *ex post facto* law, and as such violates the prohibition against *ex post facto* laws found in Article I, § 10 of the United States Constitution and Article I, § 13 of the Missouri Constitution. Section 558.019 provides enhanced punishment for repeat offenders. The statute became effective January 1, 1987. Appellant's offense occurred on November 28, 1986.

Section 558.019 provides in relevant part:

2. ... any defendant who has pleaded guilty to or has been found guilty of a felony and served time of imprisonment of not less than one hundred twenty days in the department of corrections and human resources, or in a penal institution in another state which is equivalent to the department of corrections and human resources, or a federal prison, the calculation of which shall include any jail time credit and has been committed to the department of corrections and human resources as a prior offender, persistent offender, or class X offender shall be required to serve the following minimum prison terms:

(1) If the defendant is a prior offender, the minimum prison term which the defendant must serve shall be forty percent of his sentence;

\* \* \* \* \* \*

4. For the purpose of determining the minimum prison term to be served, the following calculators and definitions shall apply:

(1) A **"prior offender"** is one who has previously pleaded guilty to or has been found guilty of one felony; ....

Before the enactment of this statute appellant would have been eligible for parole under the provisions of Section 217.690, RSMo 1986. Subsection 2 of that section provides:

Any person who has been committed to a correctional institution under the control of the division of adult institutions, who has served either one-third of his time or twelve months of the time for which he was sentenced, whichever is a shorter period, in an orderly and peaceable manner without having any infraction of the rules or laws of the institution recorded against him shall be eligible to make application for parole and shall be given a hearing. Any person who has served two-thirds of his time or two years of the time for which he was sentenced, whichever is the shorter period, shall be eligible to make application for parole and shall be given a hearing. Paroles may be granted, however, before the minimum period specified has been served.

Under Section 217.690, appellant became eligible for parole, at the discretion of the parole board, after serving one-third of his sentence. Under the enhanced sentencing provision of Section 558.019 appellant will be required to serve at least forty percent of his sentence before he is eligible for parole. Appellant argues that he should not be sentenced under the new statute since his offense occurred prior to the effective date of the statute.

In order to fall within the *ex post facto* prohibition a law "must be retrospective, that is, it must apply to events occurring before its enactment" and "it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). However, no *ex post facto* violation occurs if a change does not alter "substantial personal rights," but merely changes "modes of procedure which do not affect matters of substance." *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987), *quoting Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977).

We believe the application of Section 558.019 is retrospective in this case; since the offense occurred in November, 1986, and the enhanced sentence provisions of Section 558.019 did not become effective until January, 1987. The crucial question thus becomes, was appellant disadvantaged by the application of the law to him?

In a case applying a persistent offender statute to a defendant who received a third

conviction for driving while intoxicated, this Court in *State v. Acton*, 665 S.W.2d 618 (Mo. banc 1984), held that the application was not subject to the *ex post facto* prohibition. The defendant in *Acton* argued that sentencing under the statute was unconstitutional since at the time of his first two convictions he was not aware of the possible consequences of his guilty plea. The Court found that the offender was being punished for prior forbidden conduct that carried the possibility of sentence enhancement when it was committed, and so the subsequent enactment of a more severe statute did not substantially change the applicable punishment or work a disadvantage to the defendant. "Such statutes do not punish a defendant for his prior convictions; rather they punish him as a repeat offender for his latest offense on the basis of a demonstrated propensity for misconduct." *Acton*, 665 S.W.2d at 619, *quoting Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980). The defendant in *Acton* could not complain that the persistent offender statute was an *ex post facto* law as applied to him, because the law was in force when he committed the third offense. He was clearly disadvantaged by the application of the law as is the appellant in this case. But appellant in this case can also show that the law is retrospective as applied to him.

In *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), the United States Supreme Court held that a change in the law causing a defendant to be subjected to a longer prison term was an *ex post facto* law when applied to a defendant whose offense predated the law. At issue in this case were sentencing guidelines which were changed between the time of the offense and the time of sentencing to mandate a longer presumptive sentence. The Court held that "even if the revised guidelines law did not technically increase the punishment annexed to the crime ... it foreclosed his (defendant's) ability to challenge the imposition of a sentence longer than his presumptive sentence under the old law." *Id.* 107 S.Ct. at 2452. The petitioner was therefore substantially disadvantaged by the retrospective application of the revised guidelines to his crime.

The State argues that the defendant in *Miller* had a right to be sentenced under the guidelines, while appellant in this case has no right to a definite time period for parole eligibility. The United States Supreme Court in *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981), has said that a law need not impair a "vested right" to violate the *ex post facto* prohibition, however. *Weaver* held that a change in the law altering the availability of "gain time," or time commuted from a prisoner's sentence for good behavior, was an *ex post facto* law when applied to those whose offenses were committed before the enactment. The Court stated that "we need not determine whether the prospect of the gain time was in some technical sense part of the sentence to conclude that it in fact is one determinant of petitioner's prison term—and that his effective sentence is altered once this determinant is changed." *Id.* at 32, 101 S.Ct. at 966. The Court cited its previous holding in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), to show that a prisoner's eligibility for reduced imprisonment is a significant factor in both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed.

The Court of Appeals, Eastern District, held in *State v. Hillis*, 748 S.W.2d 694 (Mo.App.1988), that Section 558.019 violates the *ex post facto* clause when applied to sentence a defendant convicted of robbery and armed criminal action when the crime was committed before the effective date of the statute. The court found that the new statute disadvantaged the defendant by enlarging the penalty for the crime he committed. As in the case at bar, the defendant in *Hillis* would have been eligible to apply for parole under Section 217.-690 after serving a much smaller portion of his sentence. The court said that by foreclosing the defendant's ability to apply for parole, the minimum time served is increased. *See also State v. Pollard*, 746 S.W.2d 632 (Mo.App.1988); *State v. McCoy*,

748 S.W.2d 809 (Mo.App.1988); and *State v. Pruitt,* 755 S.W.2d 309 (Mo.App.1988).

The State argues further that appellant cannot be deprived of a substantive right when the right to parole is entirely within the discretion of the parole board. Section 217.690.1, RSMo 1986. This argument is not supported by the cases, however. *Warden, Lewisburg Penitentiary v. Marrero,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974), holds that parole eligibility is an element of a criminal sentence. *Maggard v. Moore,* 613 F.Supp. 150, 152 (W.D.Mo.1985), holds that parole eligibility is part of the punishment for a crime and retroactive changes in eligibility to the disadvantage of a defendant may, in some cases, violate the *ex post facto* clause. And *Yamamoto v. U.S. Parole Commission,* 794 F.2d 1295, 1300 (8th Cir.1986), holds that adverse changes in the time at which a prisoner becomes eligible for parole consideration may violate the *ex post facto* clause.

Although appellant's right to parole is not certain under the old law, under the new statute the parole board is precluded from exercising its discretion until a certain period of time has passed. Thus, appellant has been deprived of any possibility of parole until he has served forty percent of his sentence. This is clearly a change in the law which disadvantages appellant.

We conclude that the trial court erred when it sentenced appellant as a prior offender under Section 558.019. The case is remanded for sentencing under the guidelines governing parole eligibility in place when appellant committed the offense.

### IV.

▮ In his final point, appellant contends that his objection to the state's closing argument in rebuttal should have been sustained because the argument was a comment on appellant's failure to testify. The

argument proceeded in this manner.[1] In closing, appellant's attorney stressed the evidence given by appellant's alibi witnesses and contended the case was one of mistaken identification by Jensen. The state responded by calling attention to appellant's presence with the car which the burglar had used to escape and the fact that appellant put a hood over his head when Jensen was brought to make an identification. The prosecutor then said, as to each fact, "There's no explanation for any of this activity—You've got all this inexplicable behavior."

▮ A direct reference to an accused's failure to testify is made when the prosecutor uses words such as "defendant," "accused" and "testify" or the equivalent. An indirect reference is one reasonably apt to direct the jury's attention to defendant's failure to testify. *State v. McKinley,* 689 S.W.2d 628, 631 (Mo.App.1984). Although a direct reference to the failure of the defendant to testify will almost invariably require reversal of the conviction, an indirect reference is improper only if there is a calculated intent demonstrated by the prosecutor to magnify that decision so as to call it to the jury's attention. *State v. Wood,* 719 S.W.2d 756, 761 (Mo. banc 1986).

The quoted remarks in this case do not amount to a direct reference to appellant's silence because none of the words characterizing such a comment were used. It is doubtful if the argument was even an indirect reference. The obvious intent, responding to appellant's closing argument, was to suggest that appellant's alibi defense was inconsistent with the evidence that appellant was with the car used by the burglar and that appellant attempted to conceal his features to escape identification by the witness Jensen. Even were the comments to be construed as an indirect reference, however, there is no indication of an intent by the prosecutor to call to the jury's attention the fact that appellant did

---

1. Section IV is the work of the Honorable Donald B. Clark, Judge, Missouri Court of Appeals, Western District.

not testify. For these reasons, the trial court correctly overruled the objection and the point presents no ground for reversal of the conviction.

## V.

For the reasons stated, the judgment of conviction is affirmed. The cause is remanded, however, for such further proceedings as are consistent with and may be necessary under this opinion.

All concur.