**STATE of Missouri, Plaintiff–Respondent,**

v.

**Fred T. LEWIS, Defendant–Appellant.**

**Fred T. LEWIS, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 39434, WD 41377.**

Missouri Court of Appeals, Western District.

Jan. 23, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 1990.

Application to Transfer Denied April 17, 1990.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for defendant-appellant.

William L. Webster, Atty. Gen., Deborah L. Ground, Asst. Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for plaintiff-respondent.

Before SHANGLER, P.J., and LOWENSTEIN and GAITAN, JJ.

LOWENSTEIN, Judge.

The direct appeal of *State v. Fred Lewis* was taken up by this court and an opinion was filed on June 28, 1988. One point related to the failure of the trial court to grant a continuance. The other point hinged on sentencing the defendant as a "class X" offender when the crimes were

committed prior to the time the legislature had enacted the "class X" classification. This court affirmed, but transferred the case on the "class X" point to the Supreme Court for examination in light of a case with a similar issue then before this court. That case was also transferred to the Supreme Court and is reported as: *State v. Lawhorn*, 762 S.W.2d 820 (Mo. banc 1988).

On the retransfer by the Supreme Court on October 24, 1989, of *State v. Lewis* for examination in light of *Lawhorn, supra*, this court has now consolidated the direct appeal with Lewis' subsequent appeal from the denial, after evidentiary hearing, of post-conviction relief under Rule 29.15.

## THE DIRECT APPEAL

Lewis was convicted of murder in the second degree and armed criminal action, and received consecutive sentences of life and 30 years as a "class X offender." Lewis does not contest the sufficiency of the evidence before the jury as to the killing of Theresa Montoya on November 8, 1984. Briefly stated, the facts show the victim was found in a parking garage in Kansas City having been shot through the head. In October, 1985 Lewis' brother-in-law contacted the Kansas City Police Department. Officers wired this informant who then went for a ride with Lewis, during which Lewis admitted he was the person who shot Montoya.

Lewis was indicted in February, 1986. An information in lieu of indictment was filed in January, 1987, just prior to trial. The information added that Lewis was a prior, persistent, and, as pertinent here, a "class X" offender (Section 558.019.4(3), RSMo 1986). A class X offender, for purposes of minimum terms before release for repeat offenders, is defined as a person who has pleaded to or been found guilty of "three felonies committed at different times." The "class X" classification under which Lewis was sentenced in May, 1987, was added by the legislature effective January 1, 1987. The "class X" amendment was added to the 1981 "prior offender" category (one felony), and the "persistent offender" category (2 or more felonies).

■ Lewis' first point decries the *ex post facto* application of his sentence as a class X offender. The trial court found him a prior, persistent and class X offender. His brief claims this crime was committed in 1984, so *only* the "prior" or "persistent" statutory enhancements should have applied. Lewis had three previous felony convictions including forgery and stealing from the person. The ramifications of Lewis being sentenced as a class X offender as opposed to being sentenced as only a prior and persistent offender is spelled out in the appellant's brief:

Under the new statute, Appellant would be forced to serve sixty years minimum without eligibility for probation or parole. By contrast, under the old statute, no guidelines are given, only a maximum ceiling is imposed by which judges may sentence. Even though the new statute does not technically increase the punishment appellant received, it foreclosed his ability to reduce his minimum term by good behavior.

\* \* \* \* \* \*

Foreclosing the opportunity for probation or parole, changes the effect of the crime committed in 1984 and indicted in 1986. The arbitrary and unfair application of the Class X offender statute to Appellant violates the purpose of the ex post facto clause.

As a practical matter, and as proposed by Lewis, if the prior or persistent offender statutes had been used (§ 558.016), he would remain eligible for parole, but under the new § 558.019.7, there is a "minimum prison term" for a class X offender which equates to eighty percent of the sentence, § 558.019.2(3), which means Lewis must serve 60 years before becoming eligible for parole.

The resolution of this point is indeed resolved by *Lawhorn, supra*, where Judge Robertson, writing for the court ruled on analogous facts:

Although appellant's right to parole is not certain under the old law, under the new statute the parole board is precluded from exercising its discretion until a cer-

tain period of time has passed. Thus, appellant has been deprived of any possibility of parole until he has served forty percent of his sentence. This is clearly a change in the law which disadvantages appellant.

We conclude that the trial court erred when it sentenced appellant as a prior offender under Section 558.019. The case is remanded for sentencing under the guidelines governing parole eligibility in place when appellant committed the offense.

762 S.W.2d at 826.

This point is well taken and the court will remand the case for resentencing, not as a class X offender, but under the statutory guidelines in effect when the crime was committed.

 The other point concerns an attempt by Lewis' counsel to obtain a continuance for "newly discovered evidence." It is unclear whether he asks for a reversal because a continuance was not granted, or whether his new trial motion should have been sustained because of the suppressed testimony of a new witness. Either theory allows no relief for him. Defense counsel just prior to final argument stated the following for the record:

Also I received a phone call this morning from a Barbara Johnson. I don't know who Barbara Johnson is, but I intend to call her as a witness to the case and she has told me that her testimony will be that on November 8, 1984, she and her boyfriend was [sic] getting off the bus at the location of Sixth and Main, in that area, and that she saw and overheard an argument between a white male and a white female at that location.

They were on their way down to have—to a restaurant called the Brassiere, something like that, and as they were walking along they heard a female holler out, 'No, no', and heard a shot and saw a white male running from the area and run past them with a gun in his hand and went to the restaurant, which is the Brassiere restaurant.

And I think there's testimony in the case from Montoya that he walked from

that area straight over to—straight and didn't stop, to go to his home upon North Highland. The police records would indicate that he told Detective McInerney that he left that area, he walked around for sometime and he stopped at a restaurant called the Brassiere and I guess had a drink or some other activity or did something else at that bar and then left that bar-restaurant and walked across the bridge into Northland.

THE COURT: This surrebuttal has nothing to do with the rebuttal. Surrebuttal is an answer to rebuttal.

MR. WHEELER: It is not technically rebuttal testimony, but clearly it is relevant testimony, new testimony that I have not had the—known. I don't even know this lady, I just got a phone call this morning. She read in the paper that the trial was going on. Why she hadn't come forward before I don't know. I would have to talk to her about that, but it certainly is pertinent to the case. I think I should have the opportunity to talk to her about it and—

THE COURT: You're waiting until the case is over before you start preparing your case and you keep coming up with new things all the time. I have been very indulgent with you up to this point. It ends now. I have had it with you on this thing and you will be limited to proper surrebuttal and your witnesses should be here.

No continuance was ever formally requested, so Lewis may not complain on appeal. *State v. Hanson*, 735 S.W.2d 100, 103 (Mo.App.1987); *State v. Chance*, 719 S.W.2d 108, 111 (Mo.App.1986). Had a continuance been requested, it would have been properly denied.

If the point relates to his being unable to present the witness at trial, the post-trial activity on the new trial motion closes any door for relief. The witness, Ms. Johnson, was never produced. Despite any deficiencies in the offer of proof made by counsel, no testimony or affidavit was presented to show evidence was present which would implicate the victim's husband rather than Lewis. No newly discovered evidence hav-

ing been produced, it was not an abuse of discretion to deny the new trial motion. *State v. Rattler*, 639 S.W.2d 277, 279 (Mo.App.1982); *State v. Hummel*, 652 S.W.2d 749, 751 (Mo.App.1983).

## POST CONVICTION APPEAL

The trial attorney intended to rely on the fact Lewis was in the hospital the night the conversation with the informant was taped. During trial, the prosecutor presented evidence that the hospital records had been tampered with, that all signatures on the document were forgeries, and that no one with names of the nurse and medical student who allegedly had signed the documents had ever worked at the hospital. Because of this, the defense sought to rebut the fact that only the killer would have known the details of the shooting as told by the person on the tape, by showing that the story had been published in a local newspaper. However, as the state pointed out in closing argument, there were certain facts that were not published in the paper, and therefore were still only within the knowledge of the murderer.

It was also during the state's closing argument the assistant prosecutor argued, "And, folks, he said, our dumb defendant here, 'I out-slicked the police.'" Lewis claims the trial court erred in not finding that his trial counsel was ineffective in that: 1) he failed to object to the jury instructions defining "reasonable doubt;" 2) he failed to object to the "dumb defendant" argument; and 3) he introduced the newspaper article into evidence.

■ In response to the allegation that trial counsel was ineffective for failing to object to the reasonable doubt instruction, the jury was instructed in accordance with MAI–Cr3d 300.02 and 302.04. The contention is that this language dilutes the state's burden of proof to establish the guilt of the accused beyond a reasonable doubt. This same argument has been regularly advanced and uniformly rejected in numerous cases approving the language of the pattern instructions. *State v. Willis*, 764 S.W.2d 678, 679 (Mo.App.1988). The Missouri Supreme Court has repeatedly held that the "firmly convinced" language, when read in the context of required instructions as a whole, properly instructs the jury on the burden of proof. *State v. Murray*, 744 S.W.2d 762, 771 (Mo. banc 1988). Trial counsel's failure to make a meritless objection will not constitute ineffective assistance of counsel and cannot result in prejudice to the movant. *Brayfield v. State*, 738 S.W.2d 579, 582 (Mo.App.1987). The movant's first point is without merit.

As to Lewis' other allegations of ineffective assistance, to prevail on such claims, he must prove that the action of trial counsel was not that of a reasonably competent attorney under similar circumstances, and that his defense was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), as cited in *Rainwater v. State*, 770 S.W.2d 368, 369 (Mo.App.1989). Prejudice is shown where there is a reasonable probability, sufficient to undermine confidence in the outcome, that but for trial counsel's unprofessional errors, the trial's result would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. The movant must carry the burden of proof of both the performance and the prejudice prongs in order to prevail. *Id.* Further, he must overcome the presumption of trial counsel's competence. *Rainwater*, 770 S.W.2d at 369. Courts should avoid the distorting view of hindsight when reviewing an attorney's actions at the time of trial. *Sanders v. State*, 738 S.W.2d 856, 858 (Mo. banc 1987).

■ The second point is trial counsel was ineffective for failing to object to the assistant prosecutor's use of the word "dumb" in referring to Lewis. He argues that the prosecutor should not be permitted to apply unbecoming names or epithets to a defendant. *State v. Franks*, 643 S.W.2d 624 (Mo.App.1982). However, as the state's brief points out, it is not every remark which is so offensive that it impairs the movant's right to a fair trial. *State v. Burke*, 719 S.W.2d 887, 891 (Mo.App.1986). Further, a prosecuting attorney may state his conclusion if it is fairly drawn from the

evidence, and his inferences need not seem necessarily warranted. *Grubbs v. State,* 760 S.W.2d 115, 119 (Mo. banc 1988), cert. denied, —— U.S. ——, 109 S.Ct. 2111, 104 L.Ed.2d 672 (1988). In this case, the movant confessed and described the crime in detail to an informant who had been wired with a tape recorder and transmitter by the police. Trial counsel was not ineffective, nor did any prejudice result from trial counsel's failure to object.

 The final argument was that trial counsel was ineffective for introducing the newspaper article that was later used against him in that facts that were not in the newspaper were known by the person who confessed on tape. Trial counsel placed the article in evidence to show that the informant or anyone else could have known certain facts about the killing without being the murderer. The fact that the prosecutor was later able to turn the evidence against the movant does not in and of itself show that trial counsel rendered ineffective assistance. The key to the analysis is to look at the situation at the time the decision was made, not to decide what could or should have been done with the benefit of hindsight. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

At the time the decision was made, the prosecution had disclosed to trial counsel that the alibi for the night of the taped confession was not valid, and that the hospital records had been forged. Counsel needed to show that the informant was still able to have set up the whole scenario to make it look like someone else had confessed. Counsel had to tie the informant to the information and did elicit testimony which showed that the informant's wife found a copy of the article hidden in their home. Unfortunately, not all of the information on the tape was contained in the newspaper article; however, as the state's brief argues, without the newspaper article, *none* of the information could have been shown to be available to anyone but the murderer. Trial counsel chose to show that some of the information was available from another source rather than allowing the state to argue that none of these facts could be known by anyone except the police and the murderer. This court cannot say that such a trial strategy decision was not reasonably effective assistance. Furthermore, the movant has failed to show any type of prejudice in that the knowledge of all the facts of the murder would have been argued to be solely in the knowledge of the murderer without the article.

The judgment of conviction on the direct appeal is affirmed, but the case is remanded for sentencing consistent with this opinion. The judgment on the Rule 29.15 case is in all respects affirmed.