

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| CHOEYE YOUNG, | ) | No. ED111892 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | Cause No. 1922-CC00746 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Joseph P. Whyte |
| | ) | |
| Respondent. | ) | FILED: October 29, 2024 |

Opinion

Cheoye Young (Movant) appeals from the denial of his Rule 29.15[1] amended motion for post-conviction relief from his jury conviction for first-degree robbery. In his two points on appeal, Movant alleges Trial Counsel was ineffective for failing to call an expert witness in eyewitness identification (Expert),[2] and for failing to request the lesser-included offense of stealing be submitted to the jury. Because Movant failed to show Trial Counsel performed ineffectively by using reasonable trial strategy in choosing not to employ an expert witness nor choosing to submit a lesser-included offense, we find the motion court did not clearly err in denying Movant's 29.15 motion. Accordingly, we affirm the motion court's judgment.

---

[1] All Rule references are to Mo. R. Civ. P. (2018).
[2] Names are redacted pursuant to § 509.520, RSMo (Cum. Supp. 2023).

Background

*Movant's Trial*

The State charged Movant with three counts of first-degree robbery and three counts of armed criminal action. One count of first-degree robbery and one count armed criminal action were severed, tried separately, and Movant was acquitted of those charges.

At trial, evidence was adduced that an Asian couple was arriving home from grocery shopping at night when they were robbed inside their garage by one armed man, Movant, and one unarmed man, Accomplice. Movant pointed his gun at the driver's, Victim 1's, head and demanded money. Accomplice pulled Victim 2 from the car and aggressively searched her, took Victim 1's car keys, and drove off with Movant in the passenger seat. Victim 1 called law enforcement and gave a description of the assailants. Movant was the shorter of the two and wore a black-hooded sweatshirt, while Accomplice was taller and wore a red-hooded sweatshirt.

Detectives spotted the stolen car the day after the robbery and noticed a different car following closely behind it and making every turn the stolen car made. Police ran the temporary license plate of the trailing car and discovered it was linked to Movant, who matched Victim 1's description of the assailant.

Police developed a photo array, and asked Victims to identify the assailant from a packet consisting of six photographs. Victims separately identified Movant as the armed robber. Victim 1 specifically stated he recognized Movant because Movant's face had been exposed during the robbery. Movant was taken into custody, and an in-person lineup was conducted. Once again, the victims viewed the lineup separately. The lineup participants were shown to each victim one at a time. The lineup included Movant, a black male, and black police officers who were used as fillers to complete the lineup. All participants wore the same police jacket and were shown in a seated position to limit discrepancies in height or clothing. Movant, age

2

seventeen, was the youngest lineup participant. Victims identified Movant from the in-person lineup.

Prior to trial, Trial Counsel filed a motion in limine, which sought to exclude both expert and lay witness testimony commenting on the credibility of eyewitness identification. The trial court ruled it would not allow any opinion testimony on the reliability or credibility of any out-of-court eyewitness identification. However, the trial court also ruled that the parties would be able to ask questions regarding factual observations about any of the 17 catch-all factors contained in the jury instruction on eyewitness identification, Missouri Approved Instructions—Criminal (MAI-CR) 4th 410.20 (2017).

At trial, Movant's defense was misidentification. Throughout the trial, Trial Counsel used cross-examination to present Movant's misidentification defense by seeking to expose flaws in the methods used by the police in eliciting Victims' identifications. The trial court, as requested by Trial Counsel, instructed the jury on eyewitness identification based on MAI–CR 4th 410.02 as follows:

> Eyewitness identification must be evaluated with particular care.
>
> In order to determine whether an identification made by a witness is reliable or mistaken, you should consider all of the factors mentioned in Instruction No. 1 concerning your assessment of the credibility of any witness. You should also consider the following factors.
>
> One, the witness's eyesight;
>
> Two, the lighting conditions at the time the witness viewed the person in question;
>
> Three, the visibility at the time the witness viewed the person in question;
>
> Four, the distance between the witness and the person in question;
>
> Five, the angle from which the witness viewed the person in question;
>
> Six, whether the witness was familiar with the person identified;

Seven, whether the witness and the person in question are of different races or ethnicities;

Eight, any intoxication, fatigue, illness, injury or other impairment of the witness at the time the witness viewed the person in question;

Ten,[3] whether the witness was affected by any stress or other distraction or event, such as the presence of a weapon, at the time the witness viewed the person in question;

Eleven, the length of time the witness had to observe the person in question;

Twelve, the passage of time between the witness's exposure to the person in question and the identification of the defendant;

Thirteen, the witness's level of certainty of his or her identification, bearing in mind that a person may be certain but mistaken;

Fourteen, the method by which the witness identified the defendant, including whether it was in a live or photographic lineup. In determining the reliability of the identification made at the lineup, you may consider such factors as the time elapsed between the witness's opportunity to view the person in question and the lineup, who was in the lineup, the instructions given to the witness during the lineup, and any other circumstances which may affect the reliability of the identification;

Fifteen, any description provided by the witness after the event and before identifying the defendant;

Sixteen, whether the witness's identification of the defendant was consistent or inconsistent with any earlier identifications made by the witness; and

Seventeen, any other factor which may bear on the reliability of the witness's identification of the defendant.

It is not essential the witness be free from doubt as to the correctness of the identification. However, the state has the burden of proving the accuracy of the identification of the defendant to you, the jury, beyond a reasonable doubt before you may find him guilty.

---

[3] The language that typically constitutes paragraph six of MAI-CR 4th 410.02, which asks the jury to consider the weather conditions at the time the witness viewed the person identified, was omitted from the instruction entirely and replaced with the language that is typically included in paragraph seven, which asks the jury to consider whether the witness was familiar with the person identified. The language that is typically included in paragraph nine of MAI-CR 4th 410.02, which asks the jury to consider whether the witness and the person in question are of different races or ethnicities, was included in paragraph seven. No paragraph nine was submitted.

4

In her closing argument, Trial Counsel used the instruction to attack the credibility of the identifications. She argued that "memories do not work like videotape recordings," and "we know that it is harder for people to recognize faces of people of different ethnicities." Trial Counsel instructed jurors "to consider whether the witness was affected by any stress or distraction such as the presence of a weapon." Trial Counsel also asked the jury to consider the lighting conditions during the commission of the offense, and whether Victims had any visual impairments indicated by their use of glasses during trial while looking at exhibits. Furthermore, Trial Counsel contended that the photo array was flawed because the fillers did not look similar enough to Movant. In particular Movant's skin tone appeared lighter than those of the fillers, and he appeared younger than the fillers. Moreover, Trial Counsel noted that Movant's photograph stood out from the other five photographs because Movant's photo showed him wearing a red sweatshirt matching Victim's description of the assailant.

Trial Counsel attacked the reliability of Victims' identifications in her closing argument as follows:

> You know both of the [Victims], [and] [Victim 2] had to wear glasses during reading to look at the exhibits. The visibility, the distance, the lighting conditions.
>
> This happened at night and it happened fast and it happened in a very scary and traumatic way, being enclosed in their garage like that with a gun being waved at them.
>
> The instruction tells us to consider whether the witness was affected by any stress or distraction such as the presence of a weapon. Those types—that type of stress or adrenaline, that makes it more difficult to create accurate memory of a person's face to make an identification. And she said they were yelling at her. The robbers were patting both of them down all over the place, pushing them up against the wall, separating [Victim 2] from [Victim 1]. All of that made this quick incident, four to five minutes, she said it happened fast, difficult to make that identification.
>
> The last thing that I would ask you to look at in the instructions is cross-racial identification. It tells you [that] you can consider whether the witness and suspect are different races. And that is because we know that it is harder for people to

5

recognize faces of people of different ethnicities. It's harder to recognize facial features, and so that undermines the reliability of identification when it's cross-racial like that.

The trial court did not instruct the jury on any lesser-included offenses of first-degree robbery, because no such instructions were requested during the jury instruction conference.

The jury found Movant guilty on both counts of first-degree robbery and not guilty on the two counts of armed criminal action. The trial court sentenced Movant to ten years in prison for each first-degree robbery count with the sentences to run concurrently. Movant directly appealed his convictions, which this Court affirmed. *See State v. Young*, 598 S.W.3d 900 (Mo. App. E.D. 2020).

*Post-Conviction Proceedings*

In his amended Rule 29.15 motion for post-conviction relief, Movant raised the same two claims of ineffective assistance raised in this appeal concerning Trial Counsel's failure to call an identification expert and failure to request a lesser-included offense. The motion court granted an evidentiary hearing.

    1. *Eyewitness Identification Expert*

Regarding the identification claim, at the evidentiary hearing, Movant called a cognitive psychologist and university professor, (Expert). Expert had prior experience testifying as an expert on eyewitness identification and memory and had previously been engaged by the Missouri State Public Defender (MSPD) in this capacity. Movant believed Expert could have helped the jury understand the eyewitness identification instruction and that he was prejudiced by Expert's absence. Expert identified several factors that he believed influenced the identification of Movant, including poor lighting conditions, the presence of a weapon, and failure to properly follow procedure for photo and in-person lineups. He stated these conditions

6

likely created an unreliable identification. Moreover, he testified that that eyewitness identification testimony is outside the understanding of an average juror.

Trial Counsel testified that she defended Movant at trial using the theory of misidentification. She used cross-examination to attack the procedures used in the photo array and in-person lineups and elicited testimony from police witnesses about other available methods of suspect identification. Trial Counsel explained how the newly available jury instruction MAI-CR 4th 410.02, which the trial court read to the jury, supported her defense. Specifically, MAI-CR 4th 410.02 provides 17 factors juries should consider when determining whether a witness's identification is reliable. Juries are to consider whether the identifying witness was affected by various issues, such as lighting conditions, high levels of stress or other distractions such as those caused by the presence of a weapon, as well as how soon after the offense the identification was made. Trial Counsel testified she did not consider hiring an expert witness and believed the new jury instructions were helpful in presenting the misidentification defense

2.    *Failure to Request Lesser Included Instruction of Stealing*

Regarding the alleged ineffectiveness of Trial Counsel for failing to request a lesser-included instruction, Trial Counsel testified that she did not request the jury to be instructed on any lesser-included offenses "because our defense was misidentification." Trial Counsel did not want to confuse the jury be providing two different theories for deliberation. Because the defense was "that [Victims] had been robbed, but not by [Movant,]" Trial Counsel stated she thought it would be disingenuous to submit a stealing charge because, "because there was really no question of if they had been held at gunpoint."

*Motion Court's Judgment*

7

Following the evidentiary hearing, the motion court denied Movant's amended motion for post-conviction relief, finding that Trial Counsel effectively raised all issues regarding eyewitness identification and Expert's testimony would not have benefitted Movant's defense at trial. Furthermore, the motion court found that Movant had not shown that expert testimony was necessary for the jury to understand the issues pertaining to eyewitness identification. The motion court also found that Trial Counsel was not ineffective for failing to request a lesser-included offense instruction because the defense theory at trial was mistaken identity and "it was not unreasonable for counsel to pursue an all-or-nothing strategy of defense." Movant now appeals.

## Standard of Review

We review a motion court's denial of post-conviction relief for whether the motion court's findings of fact and conclusions of law were clearly erroneous. Rule 29.15(k). "A judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019) (internal quotation omitted). We will uphold the motion court's judgment if it is sustainable on any ground. *Washington v. State*, 681 S.W.3d 347, 353 (Mo. App. E.D. 2023).

## Discussion

*General Law*

Courts apply the two-prong Strickland test in claims for ineffective assistance of trial counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). This test requires a movant to demonstrate that: (1) trial counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would use in a similar situation; and (2) the movant was prejudiced by that failure. *Shockley*, 579 S.W.3d at 892 (citing *Strickland*, 466 U.S. at 688). A movant must satisfy both prongs by a preponderance of the evidence, and if the movant fails to

8

meet one prong then we need not consider the other. *Hendricks v. State*, 519 S.W.3d 510, 513-514 (Mo. App. E.D. 2017).

To satisfy the first prong, a movant "must overcome the strong presumption that trial counsel's conduct was reasonable and effective" by identifying "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Shockley*, 579 S.W.3d at 892 (internal quotation omitted). The second prong requires a movant to show "a reasonable probability that, but for [trial] counsel's unprofessional errors, the result of the proceeding would have been different. *Id*; *see also Washington*, 681 S.W.3d at 354 (Mo. App. E.D. 2023). A reasonable probability exists when there is a probability sufficient to undermine confidence in the outcome. *Tisuis v. State*, 519 S.W.3d 413, 420 (Mo. banc 2017).

## I. Point One—No Ineffective Assistance of Counsel for Failure to Call Eyewitness Identification Expert

In his first point, Movant contends that Trial Counsel was ineffective for failing to endorse and call an expert witness on eyewitness identification and memory for the purpose of educating the jury on factors that can affect the reliability of eyewitness identification. Movant claims that if Expert had been called at trial, Expert's testimony would have strengthened the defense's claim of misidentification by explaining how various factors can affect a witness's memory and ability to correctly identify perpetrators, thereby placing doubt in the jury's mind about Victims' identification of Movant and securing a verdict of acquittal. The motion court found that Movant failed to adequately show that the testimony of Expert would have benefited Movant's defense at trial. We agree.

"To prevail on a claim of ineffective assistance of counsel for failure to call a witness, the [movant] must show: (1) counsel knew of or should have known of the existence of a witness;

9

(2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense." *McFadden v. State*, 553 S.W.3d 289, 305 (Mo. banc 2018) (quoting *Deck v. State*, 381 S.W.3d 339,346 (Mo. Banc 2012). The legal standard for a claim of failure to call a lay witness is the same for expert witnesses. *DeLeon v. State*, 690 S.W.3d 535, 541 n.4 (Mo. App. E.D. 2024). "Because selection of witnesses is presumptively a choice of strategy, it typically cannot form the basis of an ineffective assistance of counsel claim." *Driskill v. State*, 626 S.W.3d 212, 229 (Mo. banc 2021).

Expert's testimony would have been barred given the trial court's pre-trial ruling on Trial Counsel's motion in limine. Specifically, Trial Counsel, through her motion in limine, made the strategic decision to bar the State from introducing testimony regarding the reliability or credibility of the eyewitness identifications. The trial court granted Movant's motion in limine, ruling that it would not allow any opinion testimony about the reliability of any out-of-court witness identification. Consequently, Trial Counsel could not seek to prohibit the State from introducing opinion testimony about the identifications while simultaneously also calling her own witness to do so without inviting error. Generally, a trial counsel is not ineffective for failing to do a futile act. *Libeer v. State*, 686 S.W.3d 309, 315 (Mo. App. W.D. 2024). Nor will a trial counsel be held ineffective for avoiding self-invited error. *See State v. Bolden*, 371 S.W.3d 802 (Mo. banc 2012). Trial Counsel purposefully limited what evidence could be presented at trial and will not be held ineffective for her reasonable strategy. *See Libeer*, 686 S.W.3d at 315.

At the time of trial, the Supreme Court of Missouri had held that defendants were not entitled to present expert testimony on eyewitness identification and that trial courts could use

their discretion in excluding or admitting this testimony. *State v. Lawhorn*, 762 S.W.2d 820, 823 (Mo. banc 1988). The Missouri Supreme Court then abrogated *Lawhorn* two years after Movant's trial concluded in *State v. Carpenter*, 605 S.W.3d 355, 359-360 (Mo. banc 2022). In *Carpenter*, the Missouri Supreme Court held that while expert testimony on eyewitness identification cannot be excluded when requested and supported by the evidence, it is not necessary in every case. *Id.* at 364. Therefore, defense counsels are free to make strategic decisions as to whether to use expert testimony or rely on cross-examination and argument, as in the case at bar, when addressing factors pertaining to the reliability of eyewitness identification.

Here, we first note that the record demonstrates Trial Counsel effectively raised the same issues Expert would have raised. By means of thorough cross-examination and reprised in her closing argument, Trial Counsel addressed the factors contained in MAI–CR 4th 410.02. Trial Counsel explained to the jury the different methods for suspect identification and how different factors can affect the reliability of eyewitness identification. The Missouri Supreme Court adopted MAI-CR 4th 410.02 to address concerns about the fallibility of eyewitness identifications. *See* MAI–CR 4th 410.02 Notes on Use No. 2. Trial Counsel identified these concerns the same way Expert would have.

For example, at the post-conviction relief hearing, Expert stated that expert testimony can help the jury understand factors that impact the reliability of eyewitness identification. Trial Counsel raised this exact point in her closing stating, "The instruction tells us to consider whether the witness was affected by any stress or distraction such as the presence of a weapon. Those types—that type of stress or adrenaline, that makes it more difficult to create accurate memory of a person's face to make an identification." Given what was presented to the jury before it made its credibility determination as to Victims' identifications of Movant, "counsel is

not ineffective for not presenting cumulative evidence." *Dorsey v. State*, 448 S.W.3d 276, 295 (Mo. banc 2014). Trial Counsel effectively raised the same issues Expert would have and, therefore, Trial Counsel's decision not to seek expert testimony was not ineffective performance. *See id.*

Although we need not reach the prejudice prong of the *Strickland* standard to affirm the motion court's judgment, we note that Movant would further fail to establish prejudice for the same reason. Specifically, Movant contends that Expert's testimony would have benefitted his defense at trial. However, "[m]ere conclusory speculations of prejudice by [m]ovant are not considered substantive evidence of counsel's ineffectiveness." *Coleman v. State*, 640 S.W.3d 159, 167 (Mo. App. E.D. 2022). Because Trial Counsel effectively raised the same issues Expert would have, Movant's argument that he would have benefited from Expert's testimony is merely speculative and fails to demonstrate prejudice. *See id.*

Accordingly, we agree with the motion court that Trial Counsel exercised reasonable trial strategy in pursuing the misidentification defense without calling an expert witness and, further, that Expert's testimony would not have benefitted Movant's defense. *See Shockley*, 579 S.W.3d at 892 (citing *Deck*, 68 S.W.3d at 429 (quoting *Strickland*, 466 U.S. at 694)). Therefore, we find that the motion court did not clearly err in denying Movant's claim in his amended motion for post-conviction relief. *See* Rule 29.15(k). Point One is denied.

## II. Point Two—No Ineffective Assistance of Counsel for Failure to Request Jury Instruction on Lesser-Included Offense of Stealing

In Point Two, Movant argues Trial Counsel was ineffective for failing to request the jury be instructed on the lesser-included offense of stealing. In his argument, Movant claims he was prejudiced because but for Trial Counsel's ineffectiveness, there is a reasonable probability the jury would have convicted him of stealing rather than the higher offense of first-degree robbery.

> To establish a claim for ineffective assistance of [trial] counsel based on the failure to request an instruction for a lesser[-]included offense, "the movant must show: (1) the evidence would have required an instruction on the lesser included offense had it been requested; (2) the decision not to request the instruction was not part of a reasonable trial strategy; and (3) the movant was prejudiced by counsel's failure."

*Cummings v. State*, 693 S.W.3d 209, 214 (Mo. App. E.D. 2024) (internal quotation omitted).

Stealing can be a lesser-included offense of first-degree robbery[4]. *Id.* at 215. Because defendants are entitled to instructions on lesser-included offenses where the evidence supports the instruction, a trial court generally grants requests for these instructions. *State v. Whitley,* 408 S.W.3d 305, 308 (Mo. App. W.D. 2013).

Here, Movant exercised reasonable strategy by not requesting a lesser-included offense instruction. Trial Counsel's decision to pursue an "all-or-nothing" defense has consistently been upheld as reasonable trial strategy. *See Jones v. State*, 514 S.W.3d 72, 81 (Mo. App. E.D. 2017) (noting a trial counsel's strategic pursuit of an "all-or-nothing" defense does not constitute ineffective assistance). Specifically, Trial Counsel argued to the jury that Movant was innocent and misidentified, without giving the jury an option to find Movant was correctly identified but did not commit the higher charge. Indeed, where the theory presented is that a movant was misidentified as the culprit, "counsel [is] not ineffective for declining to offer the jury a middle ground for conviction." *McCrady v. State*, 461 S.W.3d 443, 451 (Mo. App. E.D. 2015).

Given the outcome of trial, Movant may no longer believe misidentification was the best defense, but "[r]easonable choices of trial strategy, no matter how ill-fated they appear in

---

[4] In it's brief the State alleges that since the offense of stealing can be charged in multiple ways, stealing is not always a nested lesser-included offense of robbery first-degree. Hence, the trial court would not necessarily be required to instruct on it had counsel requested it. We need not reach that issue to resolve this appeal, as Trial Counsel was not ineffective for failing to request the instruction, even if, assuming arguendo, stealing is a nested lesser-included offense which the trial court would have been required to instruct on, had Trial Counsel so requested.

hindsight, cannot serve as a basis for a claim of ineffective assistance." *Barton v. State*, 432 S.W.3d 741, 749 (Mo. banc 2014) (quoting *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006)). Because the defense of mistaken identification was a reasonable trial strategy given the evidence in the case, Movant fails to establish that Trial Counsel was ineffective. *See Cummings*, 693 S.W.3d at 214. Because trial counsel performed reasonably, we need not assess the prejudice prong of the *Strickland* standard to deny post-conviction relief. Therefore, we find that the motion court did not err in denying Movant's motion for post-conviction relief. *See* Rule 29.15(k). Point Two is denied.

## Conclusion

The judgment of the motion court is affirmed.

Rebeca M. Navarro-McKelvey, J.

Lisa P. Page, P.J., and
Kurt S. Odenwald, J., concur.

14