In the Matter of A_____ N_____, by his next friend, D_____ J. J_____.

No. 26592.

Missouri Court of Appeals,
Kansas City District.

Oct. 1, 1973.

Charles W. Bobinette, Legal Aid Soc. of City of St. Louis, T. E. Lauer, Dudley P. Spiller, National Juvenile Law Center, St. Louis, for petitioner.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Timothy B. Brassil, Legal Officer—Juvenile Div., Circuit Ct.—City of St. Louis, St. Louis, for respondent.

Before DIXON, C. J., and SHANGLER, PRITCHARD, SWOFFORD, WASSERSTROM and SOMERVILLE, JJ.

SWOFFORD, Judge.

This is an original proceeding in habeas corpus wherein the petitioner for the writ asserts that he was unlawfully and illegally confined in the State Training School for Boys at Boonville, Missouri by the Circuit Court of the City of St. Louis, Juvenile Division. Our order and writ issued remanding the petitioner to the Juvenile Court of the City of St. Louis with the directions that said court resume jurisdiction and make temporary orders pertaining to the custody and placement of the petitioner pending the final determination of this proceeding.

This matter is now before us upon the respondent's return to the writ and attachments and the petitioner's reply thereto. The record before us consists of copies of all pleadings, orders and proceedings had with reference to the petitioner in the Circuit Court of the City of St. Louis, Juvenile Division, certified by the official court reporter thereof.

The following facts appear from the record and from uncontested and conceded statements in petitioner's brief:

On June 29, 1972, a petition was filed by a juvenile officer in the Circuit Court of the City of St. Louis, Juvenile Division, stating that A—— N—— was within the provisions of Section 211.031 RSMo 1969, in that he conducted himself in such a manner which conduct, if committed by an adult, would have been a burglary. On June 29, 1972, summons was issued to A—— N—— and to his mother, D—— J——, to appear in the Juvenile Court on July 25, 1972. On June 30, 1972, the Public Defender was appointed to represent A—— N——, and on July 21, 1972, a Social Investigation Report prepared by Juvenile Officer Jerry Kammeier was filed.

On July 25, 1972, the juvenile and his mother, represented by an Assistant Public Defender, appeared before the Commissioner of the Juvenile Court, a hearing was had, and the petition was sustained and found to be true under Section 211.031 RSMo 1969. The report of the Commissioner further stated:

"1) Commissioner recommends that respondent be committed to the State Board of Training Schools, Boonville, Missouri; 2) Further, the Commissioner recommends that commitment be suspended and respondent placed in his mother's home under Official Supervision and subject to Court Rules until his 17th birthday."

On the same day as the hearing there was a commitment issued by the Clerk and an order directed to the Sheriff of the City of St. Louis commanding him to take the juvenile to the State Board of Training Schools, but this order was never executed.

On July 26, 1972, the Juvenile Officer, Kammeier, prepared a list of Supervision Rules which, among other things, required the juvenile to "obey the laws of federal, state and local government".

The recommendation of the Commissioner was approved by the court and was adopted as the order of the court on August 15, 1972.

On October 22, 1972, A—— N—— was taken into custody by the St. Louis police for an alleged violation of the Juvenile Code (burglary) and a Juvenile Detention

Affidavit was filed by the arresting officer on October 24, 1972.

Petitioner's Statement of Facts in his brief asserts that the attorney for the Juvenile Court declined to proceed on this burglary allegation in October, 1972, and the juvenile was released to the custody of his mother. In the state's brief this assertion was adopted.

On December 1, 1972, it is conceded that A—— N—— "voluntarily presented himself to the Juvenile Court." It is not clear from either the briefs or the record what the circumstances were surrounding this appearance. It is conceded, however, that on that date the juvenile was detained upon the ground that he had violated the Rules of Supervision by being taken into custody on October 22, 1972 and on December 1 the court made the following order:

"It is this day ordered that the suspended commitment of the above named minor to the Missouri Board of Training Schools, for placement at Boonville, Missouri, made and entered by this court on August 15, 1972, be and is hereby ordered executed and further that commitment papers be drawn by the office of the Clerk."

There was no prior notice to either the petitioner or to his mother of any move to commit A—— N—— to Boonville, no hearing was afforded or held, and no counsel represented petitioner. Nor was any waiver of these due process rights requested or given. Further, there was no proof offered that petitioner had in fact violated any terms of his supervisory rules of July 26, 1972 and apparently no attempt made to determine what action would be best for the minor or the state, as contemplated by the Juvenile Code.

On December 5, 1972, Juvenile Officer Kammeier filed an affidavit in which he stated that he had seen petitioner at least twice a week; that petitioner had been keeping curfew, was employed on Saturdays and holidays stacking used bricks, was in the SWAP program and was receiving psychiatric attention at Yeatman Center and that he, Kammeier, recommended that A—— N—— be allowed to remain in the custody of his mother.

The juvenile was taken from St. Louis and delivered to the custody of the State Board of Training Schools at Boonville, Missouri where he remained until this proceeding was instituted and our writ issued on March 6, 1973.

Petitioner, seeking unconditional discharge, asserts (1) that the order of August 15, 1972, committing him to the State Board of Training Schools, suspending the execution of the commitment, and placing him in the custody of his mother under Court supervision, is void and of no effect, because not authorized by the provisions of Sections 211.181 and 211.231, RSMo 1969; (2) the Juvenile Court order of December 1, 1972, committing Petitioner to the State Board of Training Schools at Boonville is void and of no effect because entered without regard to and in violation of Section 211.211 RSMo 1969, which requires a hearing prior to commitment to the State Board of Training Schools and an opportunity for representation by counsel at a hearing held for that purpose; (3) he was denied the protection of constitutional due process because he was not afforded a judicial hearing of the alleged violation of law on October 22, 1972, or the allegation that he violated the Rules of Supervision and was not afforded a judicial hearing as to his need for commitment to the State Board of Training Schools; (4) that the order of commitment of December 1, 1972 is otherwise void because entered without regard to the purposes of the Juvenile Code, Chapter 211, RSMo 1969.

A determination of the first two issues thus raised is dispositive of the remaining two.

The respondent, on the other hand, claims, in ultimate substance, that the order of August 15, 1972 of commitment, suspension thereof and the placement of the petitioner with his mother under offi-

cial supervision was authorized both under the provisions of Chapter 211 RSMo 1969 and the inherent equitable powers of the Juvenile Court. Further, the respondent asserts that the order of December 1, 1972, executing the commitment was proper since petitioner had been afforded constitutional due process in the July and August proceedings and the order was in accord with the underlying purpose of Chapter 211 RSMo 1969.

We must reject the contentions of the respondent for a number of reasons.

■ In the first place, the juvenile courts are courts of limited jurisdiction and may exercise only such powers as are conferred by statute. State ex rel. Dew v. Trimble, 306 Mo. 657, 269 S.W. 617 (banc 1925); In re K—— W—— H——, 477 S. W.2d 433, 438 (Mo.App.1972); In re D—— J—— A—— v. Smith, 477 S.W.2d 718, 720 (Mo.App.1972); State v. Couch, 294 S.W.2d 636, 639 (Mo.App.1956).

■ Chapter 211 RSMo 1969 does not specifically confer upon the juvenile courts any power to suspend a commitment order (except in cases involving appeal) nor to grant probation or parole.[1]

The specific dispositional powers granted to the juvenile courts are set forth in Section 211.181 RSMo 1969, which reads as pertinent to the matter at hand:

"When a child is found by the court to come within the applicable provisions of section 211.031, the court shall so decree and make a finding of fact upon which it exercises its jurisdiction over the child and the court may, by order duly entered, proceed as follows:

(1) Place the child under supervision in his own home * * * upon such conditions as the court may require;

■ Commit the child to the custody of:

(a) A public agency or institution authorized by law to care for children * * *"

In the case before us there is no dispute that the juvenile court had jurisdiction over A—— N—— under Section 211.031 RSMo 1969 following the June 19, 1972 petition and the commissioner made such specific finding. Disregarding the suspension order, the court by approving and adopting the commissioner's recommendations and pursuant to the statutory authority ordered the juvenile (1) *committed* to the State Board of Training Schools, Boonville, Missouri, *and* (2) *placed* in his mother's home under official supervision. Obviously, both orders could not be executed.

■ In order for a commitment order to be effectuated it must not only be made in the proper exercise of the juvenile court's jurisdiction and result from proceedings protective of the rights of due process but also the juvenile must be *received* by the State Board of Training Schools. Section 211.041 RSMo 1969 provides, in pertinent part:

"Continuing jurisdiction over child.

When jurisdiction over the person of a child has been acquired by the juvenile court * * * the jurisdiction of the child may be retained for the purpose of this chapter until he has attained the age of twenty-one years, except in cases where he is committed to *and received by the state board of training schools.* * * *" (Italics added)

■ It thus appears that once having obtained, the jurisdiction of the juvenile court over a juvenile continues for all purposes (sections 211.011 to 211.431) under the Juvenile Code, including commitment

---

1. New York and Ohio are among the states that have by statute specifically empowered their juvenile courts to exercise the salutory power of probation or suspending commitment in dealing with juvenile delinquents. New York Family Court Act, Article 7, Sections 753, 755, 756, 757, 758; Ohio Revised Code, Sections 2151.011(15)(16), 2151.353, 2151.354, 2151.355. To implement the very purposes of all juvenile codes such powers should be conferred upon juvenile courts. The Legislature of Missouri has not, as yet, passed such statutes. Hopefully, it will soon fill this important need in our Juvenile Code.

proceedings. Such commitment can only be finalized by receipt of the juvenile by the State Board of Training Schools. Once the commitment is completed by proper order and receipt of the juvenile, the juvenile court loses jurisdiction and such jurisdiction lodges exclusively with the board unless and until it divests itself of the jurisdiction under circumstances and procedures not pertinent here. Chapter 219 RSMo 1969.

It is obvious from the record before us there was no present intention or purpose that the commitment order of August 15, 1972 (authorized by Section 211.181 RSMo 1969) be executed or finalized by delivery of the person of the petitioner into the care of the State Board of Training Schools. Rather, the part of the order placing the juvenile in his mother's home under official supervision was carried out and implemented. We conclude that the commitment part of the August 15, 1972 order was mere surplusage and a nullity but that such fact does not destroy or vitiate the placement part of the order and that such was a legal and valid disposition of the matter.

■ This brings us to the petitioner's contention that the order of December 1, 1972 committing him to Boonville was illegal and void because in violation of Section 211.211 RSMo 1969 and violative of his right of due process and the contracontention of respondent that neither the statute nor due process was violated because petitioner was afforded those rights in July-August, 1972 and there was no need to (and, indeed, strong reasons against) burdening the court with further hearings or determination.

Section 211.211 RSMo 1969 provides:

"Before any juvenile shall be committed to the state board of training schools, he shall have the opportunity to have and be represented by counsel at a hearing held for that purpose."

The original hearing, at which the petitioner was afforded counsel and the other accouterments of due process was held before the commissioner of the juvenile court on July 25, 1972 on which date he made his findings and recommendations (adopted and approved by the court on August 15, 1972). The commitment order (execution of the suspended order) was made December 1, 1972. Thus over four months had elapsed during which time the petitioner was in his mother's home under official supervision. In the meantime, he had been taken into custody on October 22, 1972 by the police, who filed a Juvenile Detention Affidavit alleging that he had violated the Juvenile Code (burglary). The legal staff of the Juvenile Court declined to proceed with this charge and the petitioner was again released to his mother. Over a month thereafter the summary commitment proceedings of December 1, 1972 occurred and thereafter (the exact date not appearing) the petitioner was delivered to Boonville, in the face of his Juvenile Officer's statement that rehabilitation was in progress in various areas and his recommendation that A—— N—— remain with his mother.

Aside from the express mandate of Section 211.211, supra, which was not followed in connection with the summary proceeding of December 1, 1972, it is clear that the period from August 15, 1972 to December 1, 1972 is a sufficiently significant interval as to require the juvenile court to conduct a hearing as to A—— N——'s present "habits, surroundings, conditions and tendencies" as contemplated by Section 211.-171(1) RSMo 1969 so that said court could make an order or judgment as would "best promote the welfare of the child" in the light of his present needs and to "carry out the objectives" of the Juvenile Code. Section 211.171(1). Further, the court at such a hearing could and should have pursued the legitimacy of the alleged violation by A—— N—— of the Juvenile Code (burglary) of October 22, 1972 as asserted by the police officer. The court had and has continuing jurisdiction under Section 211.-041 RSMo 1969 and the power to amend its previous decree under Section 211.251 RSMo 1969.

Again, aside from the clear mandate of Section 211.211, supra, and the above indicated areas of inquiry, the juvenile A—— N——'s basic constitutional rights of due process and fair treatment should have been protected by notice, benefit of counsel, notice to and presence of his mother, right of confrontation and cross-examination. The protection of such constitutional rights is now clearly the obligation of the Juvenile Court. Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970); Powell v. Hocker, 453 F.2d 652 (9th Cir. 1971).

For the reasons herein stated, our order of March 6, 1973, remanding the petitioner, A—— N——, to the Circuit Court of the City of St. Louis, Juvenile Division, is affirmed, for further proceedings in accordance with this opinion.

All concur.