In the Interest of K.H., Appellant,

v.

STATE of Missouri, Respondent.

No. WD 75653.

Missouri Court of Appeals,
Western District.

July 23, 2013.

Natalie T. Hull, Columbia, MO, for Appellant.

Kelly C. Wallis and Gary L. Gardner, Jefferson City, MO, for Respondents.

Before Division Three: LISA WHITE HARDWICK, Presiding Judge, MARK D. PFEIFFER and CYNTHIA L. MARTIN, Judges.

LISA WHITE HARDWICK, Judge.

K.H. appeals from the juvenile court's judgment extending his commitment to the custody of the Division of Youth Services ("DYS") past his seventeenth birthday. He contends that the juvenile court lacked jurisdiction over him to extend his commitment to DYS's custody and that DYS lacked the statutory authority to petition the court for an extension. For reasons explained herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

K.H. was born on August 5, 1995. The Family Court of Boone County, Juvenile Division ("juvenile court") assumed jurisdiction over K.H. in September 2010, when he was fifteen years old. The court assumed jurisdiction pursuant to Section 211.031.1(2),[1] which gives the juvenile court jurisdiction over a child who, among other things, is repeatedly absent from school, disobeys the reasonable and lawful directions of his parents, is habitually absent from his home without sufficient cause, permission, or justification, or whose behavior or associations are otherwise injurious to his welfare or to others' welfare. The court also assumed jurisdiction over K.H. pursuant to Section 211.031.1(3), which gives the juvenile court jurisdiction over a child who is alleged to have violated a state law or municipal ordinance.

1. All statutory references are to the Revised Statutes of Missouri 2000, as updated by the Cumulative Supplement 2012, unless otherwise indicated.

After assuming jurisdiction over K.H., the juvenile court entered an order of disposition committing him to the custody of the juvenile officer for placement with his father. In January 2011, the juvenile court modified the order of disposition by placing him at the juvenile justice center. In June 2011, the juvenile court modified the order of disposition by placing him with his mother. In both modifications, the juvenile court continued K.H.'s commitment to the custody of the juvenile officer.

On August 4, 2011, one day before K.H.'s sixteenth birthday, the juvenile court again modified the order of disposition. This time, the court committed him to the custody of DYS. The court ordered him to remain in DYS's custody until discharged by law or until he reached age seventeen.

On July 12, 2012, less than a month before K.H.'s seventeenth birthday, DYS filed a petition asking the juvenile court to extend DYS's custody of K.H. indeterminately beyond his seventeenth birthday for continued treatment and services.

Following an evidentiary hearing, the commissioner made findings and recommendations. The commissioner found that DYS had shown just cause and that it was in K.H.'s best interest to extend his commitment to DYS's custody to allow additional time for him to complete his full treatment program, including his residential program and aftercare. The commissioner ordered that K.H. remain in DYS's custody beyond his seventeenth birthday indeterminately for continued treatment and services. The Family Court of Boone County Juvenile Division judge entered judgment by adopting the commissioner's findings and recommendations.

K.H. filed a motion for rehearing before the Family Court of Boone County Juvenile Division judge. After hearing arguments on the motion, the judge denied the motion for rehearing. K.H. appeals.

## STANDARD OF REVIEW

■ K.H.'s two points on appeal challenge only the juvenile court's interpretation of statutes concerning its jurisdiction over him and DYS's authority. Hence, we review his allegations of error *de novo*, giving no deference to the juvenile court's decision. *In re Schneiders*, 178 S.W.3d 632, 633 (Mo.App.2005).

■ "The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *In re Boland*, 155 S.W.3d 65, 67 (Mo. banc 2005). We presume that all statutes relating to the same subject matter are *in pari materia* and are intended to be construed together, consistently and harmoniously. *In re C.A.D.*, 995 S.W.2d 21, 29 (Mo.App.1999). We are to liberally construe the juvenile code, keeping in mind that Missouri's child welfare policy is based upon " 'what is in the best interests of the child.' " *In re A.G.R.*, 359 S.W.3d 103, 110 (Mo.App.2011) (quoting § 211.011).

## ANALYSIS

In Point I, K.H. contends the juvenile court lacked jurisdiction over him to extend his commitment to DYS's custody. K.H. argues that, under Section 211.041, the juvenile court lost jurisdiction over him when it originally committed him to DYS's custody and never regained jurisdiction; therefore, it did not have jurisdiction over him to rule on DYS's petition to extend his commitment.

Section 211.041 provides that, once the juvenile court acquires jurisdiction over a child pursuant to Section 211.031, the juve-

nile court may retain jurisdiction over the child until the child is twenty-one years old, except in cases where the child is committed to and received by DYS. If the child is committed to and received by DYS, Section 211.041 states that the juvenile court loses jurisdiction over the child "unless jurisdiction has been returned to the committing court by provisions of chapter 219, RSMo, through requests of the court to the division of youth services[.]"

■■■ Though Section 211.041 uses the term "jurisdiction," in point of fact the legislature does not have the ability to expand or contract the contours of a circuit court's subject matter jurisdiction. "Subject matter jurisdiction ... is ... the court's authority to render a judgment in a particular category of case." *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009). Subject matter jurisdiction and personal jurisdiction are the only kinds of jurisdiction recognized in Missouri, and both "are based upon constitutional principles." *Id.* at 252. Specifically, "[s]ubject matter jurisdiction is governed by article V of the Missouri Constitution." *Id.* "Article V, section 14 sets forth the subject matter jurisdiction of Missouri's circuit courts in plenary terms, providing that '[t]he circuit courts shall have original jurisdiction over *all* cases and matters, civil and criminal.'" *Id.* at 253 (emphasis in original). "[A] [juvenile] court is merely a division or branch of the circuit court." *In re Zartman's Adoption*, 334 Mo. 237, 65 S.W.2d 951, 954 (1933). "'[E]ach division of the circuit court possesses all the jurisdiction vested in the circuit court [ ] by the Constitution and laws of the state.'" *Id.*

(quoting *State ex rel. MacNish v. Landwehr*, 332 Mo. 622, 60 S.W.2d 4, 6 (1933)).

■■■ Here, the matter before the juvenile court was clearly within the scope of its subject matter jurisdiction as expressed by the Missouri Constitution. Though the legislature has crafted "limits" on when and how a juvenile court should act in a juvenile matter before it, those limits are not subject-matter limits. *Webb*, 275 S.W.3d at 254 ("Elevating statutory restrictions to matters of 'jurisdictional competence' erodes the constitutional boundary established by article V of the Missouri Constitution."). Thus, the question before us is not whether the juvenile court was divested of "jurisdiction" to extend K.H.'s commitment to the custody of DYS beyond his seventeenth birthday. The question is whether the juvenile court committed legal error in doing so. *Id.* at 255 ("When a statute speaks in jurisdictional terms ... it is proper to read it as merely setting statutory limits on remedies or elements of claims for relief that courts may grant.").

We turn then to whether Section 211.041 should be construed to limit the juvenile court's ability to entertain a request by DYS to extend the term of a juvenile's commitment to the custody of DYS.

■■■ This court considered the same language in a prior version of Section 211.041 and interpreted it to mean that, once the commitment to DYS[2] "is completed by proper order and receipt of the juvenile, the juvenile court loses jurisdiction and such jurisdiction lodges exclusively with [DYS] unless and until it divests itself of the jurisdiction" under Chapter 219. *In re A—N—*, 500 S.W.2d 284, 288 (Mo.App.

---

2. Earlier versions of Section 211.041 referred to the board of training schools instead of DYS. The Omnibus State Reorganization Act of 1974 transferred all of the board of training schools' powers, duties, and functions to DYS. *Wolf v. Pers. Advisory Bd.*, 601 S.W.2d 30, 32 (Mo.App.1980).

1973) (interpreting § 211.041, RSMo 1969). In light of *Webb,* we read this holding to mean simply that, upon commitment of a juvenile to DYS, the juvenile court is essentially turning primary authority over the juvenile's supervision to DYS, subject to DYS seeking to restore that primary responsibility to the juvenile court. Under both the prior and current versions of Chapter 219, DYS divests itself of "jurisdiction" (or primary responsibility) over a child by applying to the committing court for an order relieving it of custody on the basis that the child is in need of care or treatment other than that which DYS can provide. § 219.081, RSMo 2000, § 219.220, RSMo 1969.[3]

In this case, however, DYS was not seeking to be relieved of its custody of K.H. Instead, DYS was seeking to extend K.H.'s commitment to DYS's custody past the court-ordered deadline of his seventeenth birthday. In 1995, the legislature created a procedure in Chapter 219 by which DYS could apply to extend a child's commitment to its custody. Specifically, the 1995 amendment to Section 219.021.1 provides that DYS "shall not keep any child beyond his eighteenth birth date, *except upon petition and a showing of just cause in which case the division may maintain custody until the child's twenty-first birth date.*" (Emphasis added.)

■ The amendment to Section 219.021.1 does not say where DYS is to file this petition. Nevertheless, to read it consistently with Section 219.081, we interpret it as directing DYS to file the petition in the court that committed the juvenile to DYS's custody so that court may determine whether DYS made the requisite showing of just cause to extend the commitment. Just as Section 219.081 is a

provision in Chapter 219 that expressly gives the committing court the power to rule on DYS's application to relieve itself of custody, so too should Section 219.021.1 be interpreted as a provision in Chapter 219 that implicitly gives the committing court the power to rule on DYS's application to extend its custody.

Such an interpretation is consistent with the purpose of Chapter 211, which is "to facilitate the care, protection and discipline of children who come within the jurisdiction of the juvenile court." § 211.011. Section 211.041 allows a juvenile court to retain "jurisdiction" over a child until he is twenty-one years old, unless he has been committed to DYS. Because a child's initial commitment to DYS cannot last past the child's eighteenth birthday, however, "[t]he apparent purpose of the 1995 amendment to § 219.021.1 was to allow DYS to continue providing treatment and services to a juvenile past age eighteen if a *juvenile court* found just cause for doing so." *In re R L C, Jr.,* 967 S.W.2d 674, 679 (Mo.App. 1998) (emphasis added). "Inasmuch. as § 211.041 already allowed a juvenile court to retain jurisdiction over a juvenile until age twenty-one (except where the juvenile was committed to DYS), the 1995 amendment to § 219.021.1 simply gave the juvenile court another option for treatment and rehabilitation of juveniles past age eighteen." *Id.*

■ Section 219.021.1 implicitly gives the juvenile court the ability to rule on DYS's petition to extend the child's commitment to its custody. Therefore, the juvenile court had the power and authority to rule on DYS's petition in this case. Point I is denied.

---

**3.** The 1969 version of Section 219.220 also referred to the board of training schools instead of DYS. See *supra* note 2.

In Point II, K.H. contends that, regardless of the juvenile court's authority, DYS did not have the authority to file a petition to extend custody past his seventeenth birthday. K.H. argues that Section 219.021.1 allows DYS to file a petition to extend its custody only past a child's eighteenth birthday and not past an earlier, court-ordered deadline. We disagree.

 Section 219.021.1 allows the juvenile court to commit a child to DYS's custody. Although Section 219.021.1 provides that DYS can keep a child committed to its custody up to his eighteenth birthday without an extension, nothing in Section 219.021.1 prevents the juvenile court from ordering a shorter initial commitment. The effect of the child's reaching either the statutory deadline of age eighteen or the court-ordered deadline, which in this case was age seventeen, is the same: the child's initial commitment to DYS ends. Because the purpose of the 1995 amendment to Section 219.021.1 is to allow DYS to extend the initial commitment so that it can continue to provide care and treatment to a child in its custody beyond the statutory deadline of age eighteen when the juvenile court finds just cause for doing so, we see no reason to restrict DYS's ability to petition for such an extension when the initial commitment ends before age eighteen.

Indeed, Section 219.021.5 expressly requires DYS to conduct "periodic reexaminations of all children committed to its custody for the purpose of determining whether existing dispositions should be modified or continued."

Limiting DYS's authority to request further care and treatment for a child in its custody and limiting a juvenile court's authority to determine whether just cause exists for doing so would only frustrate the legislative intent behind the 1995 amendment to Section 219.021.1, which was "to increase a juvenile court's flexibility in crafting an appropriate disposition in a juvenile case." *In re R L C, Jr.*, 967 S.W.2d at 679. DYS had the statutory authority to petition for an extension in this case. Point II is denied.

### CONCLUSION

The judgment is affirmed.

All Concur.