

# In the Missouri Court of Appeals
# Eastern District

SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In the Interest of L.A.B. | ) | No. ED102737 |
|  | ) |  |
|  | ) | Appeal from the Circuit Court |
|  | ) | of St. Francois County |
|  | ) |  |
|  | ) |  |
|  | ) | Hon. Sandy Martinez |
|  | ) |  |
|  | ) |  |
|  | ) | FILED:  December 29, 2015 |

## OPINION

The Department of Social Services, Children's Division, appeals the order of the juvenile division of the circuit court of St. Francois County instructing Children's Division to designate a person to make end-of-life medical decisions for a child in the Division's custody.  We reverse.

## Background

Baby was born August 2014 and taken into protective custody due to Mother's heroin addiction.  Paternity was not established, and Mother's parents declined custody. Children's Division placed Baby in foster care, where she thrived until November 2014 when the Division placed her with Mother's cousin and her husband. Twenty-seven days later, Baby was admitted to Children's Hospital with severe neurological injury and signs of non-accidental trauma.   Doctors later determined that she was brain-dead and

requested a do-not-resuscitate (DNR) order. All parties - Mother, Children's Division, the juvenile officer, and the guardian *ad litem* - agreed that Mother should make medical decisions for Baby, including signing a DNR order and terminating life support. At a hearing December 2nd, the parties presented their stipulation to the Juvenile Court for approval. The court declined to grant authority directly to Mother and instead ordered Children's Division to designate the appropriate person, whether Mother or someone else. Following the hearing and with the Division's permission, Mother went to the hospital and signed the requisite forms to discontinue life-sustaining support. Baby died shortly thereafter.

Children's Division now appeals the Juvenile Court's order, asserting that Children's Division lacks authority to make extraordinary medical decisions on behalf of a child in its custody, as such authority rests with the Juvenile Court.

**Appellate Review**

As a threshold matter, Mother moved to dismiss this appeal as moot in light of Baby's death. But courts make an exception to mootness when the issue has general public interest and importance, is likely to recur, and will otherwise evade appellate review. In re J.L.R., 257 S.W.3d 163, 166 (Mo. App. W.D. 2008). To establish that such is the case here, Children's Division submitted to this court: (1) a nearly identical order issued by this Juvenile Court in 2013 directing the Division to designate a party to make medical decisions for another child in the Division's custody, (2) an order issued by another Missouri circuit court in 2007 authorizing a mother to make extraordinary decisions on behalf of her child in the Division's custody, and (3) three orders issued by other Missouri circuit courts between 2010 and 2015 in which the *court* authorized the

2

termination of life support for children in the Division's custody. These orders persuade us that this issue is of public importance and likely to recur. We therefore deny Mother's motion to dismiss and exercise our discretion to review the merits.

Our standard of review for decisions in juvenile proceedings is the same as for any court-tried civil case. In re T.B.L.T., 367 S.W.3d 663, 664 (Mo. App. E.D. 2012). We will affirm the trial court's judgment unless there is no substantial evidence to support it, the decision is against the weight of the evidence, or it erroneously declares or applies the law. Id. at 665, citing Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). The Division contends that the juvenile court erred as a matter of law, so our review is *de novo*. Missouri Dept. of Social Services, Children's Div. v. B.T.W., 422 S.W.3d 381, 387 (Mo. App. W.D. 2013).

**Discussion**

Children's Division asserts that the Juvenile Court erred by requiring the Division to make extraordinary medical decisions for Baby because that authority rests with the Juvenile Court.

In support of its position, Children's Division cites the statutory framework establishing its limited authority. Most notably, Children's Division has the power "to accept for social services and care homeless, dependent, or neglected children in all counties where *legal custody* is vested in the children's division by the juvenile court where the juvenile court has acquired jurisdiction."[1] §207.020.1(17). "Legal custody"

---

[1] References to the juvenile court's "jurisdiction" should be interpreted to articulate its "authority," merely setting statutory limits on remedies or relief that the court may grant. K.H. v. State, 403 S.W.3d 720, 723 (Mo. App. W.D. 2013) citing J.C.W. ex rel. Webb v. Wyciskalla, 275 S.W.3d 249, 253 (Mo. 2009).

3

means the right to the care, custody and control of a child and the duty to provide food, clothing, shelter, *ordinary medical care*, education, treatment, and discipline of a child. §211.021.1(4); Rule 110.04(16). (emphasis added) Given this definition and invoking the maxim *expressio unius est exclusio alterius* (the expression or inclusion of one thing implies the exclusion of the other), Children's Division contends that its authority to make medical decisions for a child in its custody is limited to ordinary decisions and excludes extraordinary decisions such as that affecting Baby here.

The Juvenile Officer responds that Juvenile Court did not err in requiring the Division to make decisions for Baby because, as legal custodian, the Division routinely manages the medical circumstances of children in its care and thus is better suited for the responsibility.

Both parties stray from the relevant issue in debating whether Children's Division has the statutory authority to make extraordinary medical decisions. We need not opine on the precise scope of Children's Division's authority or where the line is drawn between ordinary and extraordinary care. Rather, the narrow question before us on the present facts is whether the Juvenile Court abdicated its responsibility by directing Children's Division to designate a decision-maker?[2] We hold that it did.

The juvenile code "is rooted in the concept of *parens patriae*, that the state will supplant the natural parents when they fail in that role … . This *parens patriae* relationship exists between the child and the *juvenile court*." J. D. H. v. Juvenile Court of St. Louis Cnty., 508 S.W.2d 497, 500 (Mo. 1974) (emphasis added); In Interest of R L C, Jr., 967 S.W.2d 674, 677 (Mo. App. S.D. 1998).

---

[2] Children's Division operates under the aegis of the Department of Social Services and thus acts on behalf of the executive branch of government.

4

For example, the aforementioned statute empowering Children's Division to accept children into care when the juvenile court confers legal custody (§207.020.17) further contemplates that, if a child in custody needs care or treatment that the Division cannot provide, then the Division can ask the court to relieve it of custody. The court must act swiftly and "shall be vested with full power to make such disposition of the child as is authorized by law." §207.020.1(17)(a).[3] As another example, §210.166, governing actions for medical neglect, permits Children's Division to file a petition and empowers the circuit court to ensure that medical services are provided to the child when the child's health requires it."[4] In short, while the Division's authority is limited, the court's authority is broad.

The primacy of the court's *parens patriae* responsibility is evident throughout Missouri statutes and case law. The General Assembly has declared that, as a matter of public policy, the paramount concern is the best interest of the child. See *e.g.*, §211.011 (state's child welfare policy is best interests of the child); §211.443 (statutes regarding

---

[3] The full text of §207.020.1(17)(a) states: The children's division may, at any time, if it finds the child placed in its custody is in need of care or treatment other than that which it can provide, apply to the court which placed such child for an order relieving it of custody of such child. The court must make a determination within ten days and the court shall be vested with full power to make such disposition of the child as is authorized by law, including continued custody.

[4] Section 210.166 authorizes Children's Division, juvenile officers, physicians, hospitals, and other health care providers to bring an action alleging medical neglect by a child's parents or guardians and to obtain a court order authorizing the requisite care. The statute states in pertinent part: "A petition filed under this section shall be expedited by the court involved in every manner practicable, including, but not limited to, giving such petition priority over all other matters on the court's docket and holding a hearing, at which the parent, guardian or other person having authority to consent to the medical care in question shall, after being notified thereof, be given the opportunity to be heard, and issuing a ruling as expeditiously as necessary when the child's condition is subject to immediate deterioration. Any circuit or associate circuit judge of this state shall have the authority to ensure that medical services are provided to the child when the child's health requires it."

termination of parental rights to be construed to promote best interests of the child). Missouri law leaves no doubt that the court is the ultimate authority on that question. See *e.g.*, §452.375.2 (*court* shall determine custody in best interests of the child); In re Marriage of Hendrix, 183 S.W.3d 582, 591 (Mo. 2006) (*court,* not parties, determines what custody arrangement is in the best interests of the children.); In re Q.A.H., 426 S.W.3d 7, 12 (Mo. 2014) (*courts* must determine whether termination of parental rights is in the best interests of the child).

By analogy, in the probate context, a guardian appointed by the probate court has statutory authority to make end-of-life decisions on behalf of the ward. Matter of Warren, 858 S.W.2d 263 (Mo. App. W.D. 1993). The probate court must determine the proper guardian for incapacitated persons notwithstanding the recommendation of the Department of Mental Health.[5] See *e.g.*, Prost v. Schuffman, 202 S.W.3d 41 (Mo. App. E.D.) (probate court obligated to consider suitability of family member as potential guardian for disabled adult notwithstanding DMH request for appointment of public administrator). Missouri law also recognizes the probate court's authority to appoint a guardian for children who are under the "parallel" jurisdiction of the juvenile court pending termination of parental rights and adoption. In re J.M.J., 404 S.W.3d 423 (Mo. W.D. 2013).

---

[5] Like the Department of Social Services, the Department of Mental Health is also part of the executive branch.

Simply put, the judiciary is vested with the responsibility to authorize end-of-life medical decisions on behalf of and in the best interests of children under its jurisdiction.[6] The court may not abdicate or delegate that duty.

**Conclusion**

The Juvenile Court erred in ordering Children's Division to appoint a person to direct Baby's end-of-life care. The trial court's judgment is reversed.

_____
Lisa Van Amburg, Chief Judge

Gary M. Gaertner, Jr., J., and
Philip M. Hess, J., concur.

---

[6] Of course, absent termination of parental rights, subrogation of parental authority in these circumstances is subject to the requirements of due process, particularly notice and an opportunity to be heard. Due process was satisfied here in that Mother participated in the proceedings, and there was no evidence in the record suggesting that Mother was incapable of making the decision.