

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| IN THE INTEREST OF: D.R.C. | ) | No. ED107246 |
| | ) | |
| | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| | ) | |
| | ) | Honorable Robin Ransom |
| | ) | |
| | ) | Filed: September 17, 2019 |

### OPINION

Juvenile D.R.C. appeals the juvenile court's judgment committing him to the Division of Youth Services after he violated terms of his intensive court supervision. He seeks a remand for a new dispositional hearing. During the pendency of this appeal, however, D.R.C. turned eighteen years old. The Division of Youth Services discharged D.R.C. from its custody and supervision, and the juvenile court did not regain jurisdiction over him. This case is now moot. No exception to the mootness doctrine applies, allowing us to exercise our discretion to consider the merits of the appeal. We thus dismiss the appeal.

### *Factual Background*

When D.R.C. was sixteen years old, the juvenile court found that he had committed the delinquent acts of open display of a firearm and resisting arrest. D.R.C. admitted that he committed the offenses. The juvenile court placed D.R.C. on intensive official court supervision and committed him to the custody of his mother, subject to certain terms and conditions. In

placing D.R.C. on court supervision, the juvenile court explained the rules and expectations of supervision to D.R.C., and D.R.C. told the court that he understood those rules and expectations. The juvenile court also expressly informed D.R.C., numerous times, that if he violated any term or condition of his supervision, the court would commit him to the Division of Youth Services. D.R.C. understood this as well.

Four months later, the Juvenile Officer moved to modify the juvenile court's disposition order, alleging that D.R.C. had violated five conditions of his court supervision.[1] The juvenile court found that D.R.C. had indeed violated the court's order and committed him to the care, custody, and control of the Division of Youth Services.

D.R.C. now appeals, asking that we vacate his disposition and remand the case for a new dispositional hearing before a different juvenile commissioner. He contends that in making the decision to commit him to the Division of Youth Services, the juvenile commissioner impermissibly considered the fact that he requested an adjudication hearing rather than just admitting the allegations made against him in the motion to modify.[2] D.R.C. does not challenge the finding that he violated the terms of supervision, nor does he challenge the initial adjudication of delinquency.

---

[1] Specifically, the Juvenile Officer alleged that D.R.C.:
    1. Failed to abide by the reasonable and lawful directions of his custodian (mother), in that D.R.C. left home without permission on June 13, 2018, and did not return.
    2. Failed to appear for a review hearing before the Commissioner on June 27, 2018.
    3. Failed to attend office visits with his assigned DJO on June 12, 14, 19, 21, 26, 28, 2018, and all subsequent dates.
    4. Failed to perform 40 hours of community service.
    5. Failed to participate out-patient drug treatment on June 18, 21, 25, 28, 2018, and all subsequent dates.

[2] D.R.C. did not lodge an objection at the dispositional hearing when the juvenile commissioner announced commitment to the Division of Youth Services. We acknowledge juvenile's argument, that he believes he was being "punished" and committed to the division for proceeding to a hearing on the alleged violations, but his argument is meritless. A review of the entire transcript from the dispositional hearing – not just the cherry-picked passages relied upon by D.R.C.– clearly shows that the juvenile commissioner based her decision on D.R.C.'s violations, his history, and his character. The commissioner's statements in no way imply that she was "punishing" D.R.C. and committing him to the division, either in part or in whole, because he requested a hearing. We especially note that D.R.C. admitted several times during the dispositional hearing that the juvenile court had indeed informed him that it would commit him to the Division of Youth Services if he violated any term of his supervision.

After he filed his appeal in this Court, D.R.C. turned eighteen, and the Division of Youth Services discharged him, in accordance with Section 219.026 RSMo.[3] The Juvenile Officer has filed a motion to dismiss this appeal as moot because D.R.C. has aged out of the juvenile-justice system.[4]

## *Discussion*

"A threshold question in any appellate review of a controversy is the mootness of the controversy." *State ex rel. Reed v. Reardon*, 41 S.W.3d 470, 473 (Mo. banc 2001); *In Interest of S.B.A.*, 530 S.W.3d 615. 619 (Mo. App. E.D. 2017). It is well-settled in Missouri that courts do not determine moot cases. *Kinsky v. Steiger*, 109 S.W.3d 194, 195 (Mo. App. E.D. 2003). Mootness implicates the justiciability of a case. *Reardon*, 41 S.W.3d at 473. "A question is justiciable only where the judgment will declare a fixed right and accomplish a useful purpose." *Kinsky*, 109 S.W.3d at 195. "When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed." *Reardon*, 41 S.W.3d at 473 (internal quotation omitted); *Kinsky*, 109 S.W.3d at 195. "If no relief can be granted … because the situation has so changed that the relief sought cannot be granted, the court will not go through the empty formality of determining whether or not the relief asked for … could have been granted but for changed conditions." *In Interest of R.L.P.*, 536 S.W.2d 41, 43 (Mo. App. 1976). "Even a case vital at inception of the appeal may be mooted by an intervening event which so alters the position of the parties that any judgment rendered merely becomes a hypothetical opinion." *Reardon*, 41 S.W.3d at 473; *R.L.P.*, 536 S.W.2d at 44 (dismissing appeal as moot where juvenile sought release from custody of Division of Youth Services either via new hearing or outright discharge, and division terminated its

---

[3] All statutory references are to RSMo 2000.
[4] Though not required, D.R.C. did not file a response or suggestions in opposition to the Juvenile Officer's motion to dismiss.

custody and supervision of the juvenile during pendency of appeal; court reasoned that it could not grant effective relief because juvenile had received all the relief to which he was entitled).

The controversy in this case is moot. D.R.C. seeks remand to the juvenile court for a new dispositional hearing. But the jurisdiction – meaning the authority and supervision – of the juvenile court over D.R.C. has ended.[5] The juvenile courts are courts of limited jurisdiction and may exercise only such powers as are conferred by statute. *In re A__ N__*, 500 S.W.2d 284, 287 (Mo. App. 1973). Jurisdiction of the juvenile court is set out in Section 211.031 and Section 211.041. The juvenile court here acquired jurisdiction over D.R.C. under Section 211.031.1(3), which provides that the juvenile court has exclusive original jurisdiction in proceedings involving any person who is alleged to have violated a state law prior to attaining the age of seventeen years. Section 211.031.1(3).

The juvenile court was divested of that jurisdiction, however, when the court committed D.R.C. to the Division of Youth Services. Not only did the juvenile court expressly note in its commitment order that it was not retaining jurisdiction, but the court lost jurisdiction by operation of Section 211.041. That section provides that when the juvenile court has acquired jurisdiction over a juvenile in situations such as this, the court may retain that jurisdiction until the juvenile reaches the age of twenty-one, "except in cases where [the child] is committed to and received by the division of youth services…." Section 211.041. Once a juvenile is committed to, and received by, the Division of Youth Services, the juvenile court loses jurisdiction and such jurisdiction lodges exclusively with the division. *K.H. v. State*, 403 S.W.3d

---

[5] As explained in *KH v. State*, the term "jurisdiction" in this context means "primary authority" or "primary responsibility." *K.H. v. State*, 403 S.W.3d 720, 722-4 (Mo. App. W.D. 2013). The juvenile court is a division or branch of the circuit court, and thus possesses all the jurisdiction vested in the circuit court by the Constitution and laws of the state. *Id*. at 723. However, the legislature has crafted "limits" on when and how a juvenile court should act in a juvenile matter before it. *Id*.

720, 723 (Mo. App. W.D. 2013). Thus, when D.R.C. was committed to and received by the Division of Youth Services, jurisdiction over him lodged exclusively with the division.

The juvenile court may regain jurisdiction from the Division of Youth Services in certain select circumstances, but none exist here. The juvenile court may request that jurisdiction over a juvenile committed to and received by the Division of Youth Services be returned to the court. Section 211.041. But nothing in the record shows that the juvenile court made such a request here. Similarly, the juvenile court may regain jurisdiction upon request by the Division of Youth Services. The division may apply to the juvenile court for relief from its custody where a child is in need of care or treatment which the division is not equipped to provide. Section 219.081; *see also*, *State v. Tate*, 637 S.W.2d 67, 71–72 (Mo. App. E.D. 1982).[6] But the division made no such request here. The juvenile court may also acquire jurisdiction anew as a result of new jurisdictional facts that arise after commitment. *Durant v. State*, 523 S.W.2d 837 (Mo. App. 1975)(holding juvenile court could exercise newly-acquired jurisdiction over juvenile, committed on basis of felonious assault, but then returned to the jurisdiction of the juvenile court to face murder charge after assault victim died). No such facts are alleged to have arisen in this case. Thus, the juvenile court in this case was divested of its jurisdiction over D.R.C., and it never regained that jurisdiction, nor acquired jurisdiction anew.

Further, D.R.C. turned eighteen during the pendency of this appeal and has completed his time at the Division of Youth Services. As a general rule, the Division of Youth Services may only maintain custody of a juvenile until the juvenile's eighteenth birth date. Section 219.021.1.[7]

---

[6] A holding in *Tate* on an unrelated point was overruled by *State v. Carson*, 941 S.W.2d 518, 520, 524 (Mo. banc 1997). *In Interest of R L C, Jr.*, 967 S.W.2d 674, 679 n.3 (Mo. App. S.D. 1998).

[7] Section 219.021.1 mandates that:

> [t]he division shall not keep any youth beyond his eighteenth birthdate, except upon petition and a showing of just cause in which case the division may maintain custody until the youth's twenty-first birth date.

The division could have, but did not petition the juvenile court to extend the division's custody of D.R.C. *Id*. Instead, the division discharged D.R.C. from its custody and supervision when D.R.C. turned eighteen.

Not only has D.R.C. completed his time at the Division of Youth Services, but he has done so successfully. The discharge summary from the division shows that D.R.C. successfully completed and met the program's expectations. During his time with the division, D.R.C. showed respect to staff and peers, and took responsibility for his own actions. He developed healthy coping skills, worked on effective communication, and managed his anger within a structured environment. He participated fully in all activities and discussions, and completed all his program work – teaching sessions, life skills, and time/anger management – in a timely manner. He demonstrated a genuine interest towards returning to the community. He participated in computer classes, gained life skills and job readiness. During his time at the division he was employed in the student-work program, and participated fully in all activities at the facility. He also participated in outings away from the facility, and exhibited appropriate behavior during those outings. D.R.C. attended school each day, completed all credits for high school, and is scheduled to attend college this fall. In addition to the fact that D.R.C. is no longer under the jurisdiction of the division or juvenile court, we are hard-pressed to see what effect a remand would have. We can not un-ring a bell. The court can not take away the time he spent at the division, nor commit him to another disposition, or even another term at the division, after he has successfully completed his time at the division.

In sum, D.R.C. seeks remand for a new dispositional hearing. Implicitly, he seeks discharge from his prior commitment to the custody of the Division of Youth Services. The division has already discharged him. This is all the relief to which D.R.C could be entitled either

6

at the hands of this court or the juvenile court. D.R.C. is no longer under the supervision of either the division or the juvenile court. This case is now moot. *See R.L.P.*, 536 S.W.2d at 44.

We acknowledged that exceptions exist, allowing this Court to exercise its discretion and reach the merits of a moot case, but those exceptions do not apply here.[8] And we particularly acknowledge that the appellate courts in Missouri have reached the merits of otherwise moot cases from the juvenile court via an exception to the mootness doctrine. *See, e.g., In Interest of S.B.A.*, 530 S.W.3d 615 (Mo. App. E.D. 2017); *In Interest of N.R.W.*, 482 S.W.3d 473 (Mo. App. E.D. 2016); *T.S.G. v. Juvenile Officer*, 322 S.W.3d 145 (Mo. App. W.D. 2010); *D.C.M. v. Pemiscot County Juvenile Office*, 2019 WL3796185 (Mo. banc 2019). But those cases are factually distinguishable, in a critical way. In those cases, the juveniles were challenging the initial adjudication of delinquency. *S.B.A.*, 530 S.W.3d at 618-19 (challenging sufficiency of evidence to support finding that he committed delinquent acts); *N.R.W.*, 482 S.W.3d at 477 (denied right to counsel during adjudication hearing); *T.S.G.*, 322 S.W.3d at 150 (deprived of notice and due process where, after close of evidence at adjudication hearing, court amended petition to conform to evidence, and then found that juvenile had committed a status offense that was not alleged in original petition); *D.C.M.*, 2019 WL3796185 at *6-7 (in part, challenging sufficiency of evidence to support finding that he committed delinquent act). Even though the juveniles had been released from supervision during the pendency of their appeals and the juvenile court no longer had jurisdiction over the juveniles, the appellate courts reached the

---

[8] Specifically, an appellate court may exercise its discretion to decide an otherwise moot appeal when: (1) the case becomes moot after it is argued and submitted; and (2) where the issue raised in the case is one of general public interest and importance, is likely to recur, and will otherwise evade appellate review. *S.B.A.*, 530 S.W.3d at 619. Neither of these exceptions apply in this case. This case became moot prior to submission, and it does not present an issue of general public interest, in that the relief sought is limited to a single individual. *See Broyles v. Dep't of Cmty. Health & Env't of St. Charles County.*, 456 S.W.3d 517, 520-21 (Mo. App. E.D. 2015)(declining to apply the public-interest mootness exception to an appeal pertaining to one specific animal); *accord State ex rel. Allen v. Parks*, 575 S.W.3d 727, 731 (Mo. App. E.D. 2019)(declining to apply public-interest mootness exception where relief sought pertained to an individual prosecutor who was no longer in office; noted that courts generally decline to apply the exception when the primary relief sought is limited to a single individual).

merits of the appeals because the juveniles' delinquency adjudication could have significant collateral consequences for the juveniles into their adult lives.[9] *S.B.A.*, 530 S.W.3d at 620-22; *N.R.W.*, 482 S.W.3d at 475; *T.S.G.*, 322 S.W.3d at 148; *D.C.M.*, 2019 WL3796185 at *2. D.R.C., however, does not challenge his adjudication of delinquency. Indeed, he admitted committing the offenses. His adjudication of delinquency would stand, no matter if we reached the merits of his appeal, or not. Thus, collateral-consequences concerns are not an issue in this case, calling for us to exercise our discretion and consider the merits of this appeal.

### *Conclusion*

This case is moot, and no exception applies for us to exercise our discretion and reach the merits of this appeal. We grant the Juvenile Officer's motion and dismiss this appeal as moot.

_____
Angela T. Quigless, J.

Mary K. Hoff, P.J., and Sherri B. Sullivan, J., concur.

---

[9] Notably, however, in relying on an exception to the mootness doctrine, the courts in these other cases implicitly found that the case was moot because the youth had aged out and/or otherwise been discharged from the court and division's supervision.